*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0190p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TERRY WHITE, et al.,

*Plaintiffs-Appellants,*

*v.*

No. 03-4164

THE INSURANCE COMPANY OF THE STATE OF
PENNSYLVANIA,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-00999—David D. Dowd, Jr., District Judge.

Argued: December 7, 2004

Decided and Filed: April 26, 2005

Before: MARTIN and MOORE, Circuit Judges; BUNNING, District Judge.[*]

---

## COUNSEL

**ARGUED:** Robert E. Kerper, Akron, Ohio, for Appellants. Dale D. Cook, WILES, BOYLE, BURKHOLDER & BRINDARDNER, Columbus, Ohio, for Appellee. **ON BRIEF:** Robert E. Kerper, Akron, Ohio, for Appellants. Dale D. Cook, Michael L. Close, WILES, BOYLE, BURKHOLDER & BRINDARDNER, Columbus, Ohio, Steven G. Janik, Devin J. Oddo, JANIK & DORMAN, Cleveland, Ohio, for Appellee.

---

## OPINION

---

BOYCE F. MARTIN, JR., Circuit Judge. Terry White, who was injured during the scope of his employment with Preston Trucking Company, filed this action seeking a declaration that he is entitled to uninsured/underinsured motorist coverage under two insurance policies issued to Preston by The Insurance Company of The State of Pennsylvania. White's wife and their children have filed separate claims for loss of consortium. The district court granted the Insurance Company's motion for summary judgment on all claims, holding that no coverage was available under either insurance policy. In light of the Supreme Court of Ohio's recent decision in *Gilchrist*

---

[*] The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

*v. Gonsor*, 821 N.E.2d 154 (Ohio 2004), we VACATE the district court's judgment and REMAND for further proceedings.

On approximately August 6, 1997, while operating a tow motor in the course and scope of his employment with Preston Trucking Company, Terry White was involved in an accident with another Preston employee who was operating a tractor-trailer in the course and scope of his employment. White suffered what the district court described as "severe, disabling, and permanent physical injuries." He also has incurred significant expenses. According to his principal appellate brief, White's medical expenses to date total approximately $55,000.00 and are increasing. He also alleges that he has suffered lost wages and a reduction of future earning capacity.

White filed this lawsuit seeking uninsured/underinsured motorist coverage under two insurance policies issued by the Insurance Company to Preston: an automobile liability policy (#TP2713829RA) and an excess indemnity policy (#TXT2712212). Each policy has a liability limit of three million dollars and each is subject to a Self-Insured Retention Agreement requiring Preston to reimburse the Insurance Company for up to two million dollars for any losses paid. In effect, the Self-Insured Retention Agreement rendered this insurance arrangement what may be called a partial fronting arrangement. The term "fronting" refers to situations in which "the business pays a greatly discounted premium to an insurance company with insurance licensing and filing capabilities in particular states" in exchange for "an insurance policy that complies with the financial-responsibility laws of each state in which the business is required to maintain proof of financial responsibility." *Gilchrist*, 821 N.E.2d at 603 (Stratton, J., dissenting). Practically speaking, the business "is renting an insurance company's licensing and filing capabilities," which is often economically advantageous for the business. *Id.* In typical fronting policies, the deductible matches the limit of liability, such that the business bears the entire risk of loss. In this case, however, Preston retained the risk of loss for only the first two million dollars of the policies' respective three million dollar liability limits, thereby rendering the insurance arrangement in this case only a "partial" fronting arrangement.

Although uninsured/underinsured motorist coverage was expressly included in the automobile liability policy in the amount of $50,000, Preston purported to reject that coverage in Ohio. As it turns out, however, Preston's purported rejection was invalid because the offer and acceptance requirements set forth in *Linko v. Indemnity Insurance Co. of North America,* 739 N.E.2d 338 (Ohio 2000), were not satisfied. Pursuant to then-existing Ohio law, Ohio Rev. Code § 3937.18 (1994), where—as here—the limits of such coverage are not offered and rejected according to law, express uninsured/underinsured motorist coverage that is for less than an automobile liability policy's liability limit is invalidated *in toto* and such coverage arises by operation of law with coverage equal to the full policy limit. White argues that this is precisely what happened in this case.

The Supreme Court of Ohio has held, however, that the provisions of former section 3937.18 do not apply to self-insurers. *Grange Mut. Cas. Co. v. Refiners Transp. & Terminal Corp.*, 487 N.E.2d 310, 311 (Ohio 1986).[1] In an attempt to escape the requirements of former section 3937.18, the Insurance Company argues that Preston qualifies as a "self-insurer." The district court agreed, holding that Preston's partial fronting arrangement did, in fact, render it a self-insurer "in the

---

[1]The concept of self-insurance has been described as follows:

Self-insurance is "the practice of setting aside a fund to meet losses instead of insuring against such through insurance." Black's Law Dictionary (6 Ed.1990) 1360. Self-insurance is the antithesis of insurance. *Physicians Ins. Co. of Ohio v. Grandview Hosp. & Med. Ctr.*, [542 N.E.2d 706, 707 (Ohio App. 1988)]. Insurance shifts the risk of loss from the insured to the insurer. A self-insurer retains the risk of loss imposed by law or contract. *Id.*

*McCollum v. Cont'l Ins. Co.*, No. L-92-141, 1993 WL 382455, at *4 (Ohio Ct. App. Apr. 9, 1993).

practical sense." Accordingly, the court concluded that the provisions of former section 3937.18 did not apply and that no uninsured/underinsured motorist coverage was available to White. White now appeals the district court's summary judgment for the Insurance Company.

During the pendency of this appeal, the Supreme Court of Ohio decided the case of *Gilchrist v. Gonsor*, in which the question presented was "whether insurance policies with a deductible that matches the limit of liability, known as fronting policies, are subject to the provisions of former R.C. 3937.18." 821 N.E.2d at 599. The court held that, where the employer does not otherwise "prove financial responsibility" pursuant to section 4509.45(A)(1)-(5) of the Ohio Revised Code—i.e., by obtaining "a financial-responsibility identification card, a certificate of insurance, a bond, a certificate of deposit of money or securities, or a certificate of self-insurance," *id.* at 600 (discussing Ohio Rev. Code § 4509.45(A)(1)-(5))—an employer with such a fronting policy is not a self-insurer and, thus, the requirements of former section 3937.18 are fully applicable, *id.* at 600-01. To permit the employer to use the fronting policy as a substitute for a certificate of self-insurance, the court reasoned, would subvert section 4509.72(B), which provides that only those with "sufficient financial ability to pay judgments against [them]" are able to obtain a certificate of self-insurance. *Id.* Therefore, the court held that uninsured/underinsured motorist coverage was available under the automobile liability policy in question.

In light of *Gilchrist*, it is clear that the provisions of former section 3937.18 do apply to the automobile liability policy in this case, and the district court erred in concluding otherwise. It is undisputed that Preston, like the employer in *Gilchrist*, has not proven financial responsibility pursuant to section 4509.45(A)(1)-(5). And if the complete fronting arrangement in *Gilchrist*—wherein the deductible matched the limit of liability—was insufficient to render the employer self-insured, the same must be true of the partial fronting arrangement in this case. Therefore, we hold that Preston's partial fronting arrangement does not render Preston a self-insurer, which means that the provisions of former section 3937.18 are in full effect as to the automobile liability policy. *Id.* at 601 (explaining that because the employer "met its statutory duty to provide proof of financial responsibility by purchasing a contract of insurance[,] . . . its insurer[] is subject to the provisions of former R.C. 3937.18").

No uninsured/underinsured motorist coverage is available to White, however, under the excess indemnity policy. The parties agree that former section 3937.18 applies only to automobile or motor vehicle liability policies and does not apply to indemnity policies. The excess indemnity policy in this case provides that "this policy is a contract of indemnity against loss and *is not a contract of indemnity against liability or a policy of liability insurance*." (Emphasis added). This language plainly reveals that the excess indemnity policy is not an automobile or motor vehicle liability policy.

White argues, however, that an "MCS-90 Endorsement" converts the excess indemnity policy into an automobile liability policy for purposes of former section 3937.18. We disagree. The MCS-90 Endorsement explicitly provides that any payment that it requires is afforded for "public liability" and "does not apply to injury to . . . the insured's employees while engaged in the course of their employment." Moreover, the Ohio Court of Appeals has held that the MCS-90 Endorsement "is not insurance" and, accordingly, "need not provide underinsured motorist coverage." *Tope v. Pamco, Inc.*, No. 93AP-11, 1993 WL 308436, at *6 (Ohio Ct. App. July 27, 1993). Contrary to White's assertions, we simply cannot read the MCS-90 Endorsement as somehow transforming the excess indemnity policy into an automobile liability policy.

Finally, we note that White's family members are not entitled to uninsured/underinsured motorist coverage under any insurance policy at issue in this case. In *Westfield Insurance Co. v. Galatis*, which was decided after the district court issued its opinion in this case, the Supreme Court of Ohio held that "[w]here a policy of insurance designates a corporation as a named insured, the

designation of 'family members' of the named insured as other insureds does not extend insurance coverage to a family member of an employee of the corporation, unless that employee is also a named insured." 797 N.E.2d 1256, 1259 (Ohio 2003) (overruling *Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.*, 715 N.E.2d 1142 (Ohio 1999)); *see also Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 626 n.1 (6th Cir. 2004) (recognizing *Westfield*'s limitation on the availability of uninsured/underinsured motorist coverage). It is undisputed that none of White's family members is a named insured under the automobile liability policy or the excess indemnity policy; as such, they are not entitled to uninsured/underinsured motorist coverage under either policy.

For the aforementioned reasons, the district court's judgment is VACATED and the case is REMANDED for further proceedings consistent with this opinion.